UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES E. JEFCHAK,           )
                                       )
                Plaintiff,     )
                                       )
      vs.                      )     06 C 5681
                                       )
SCHWEPPE & SONS, INC.,     )
                                       )
                Defendant.   )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter is before the Court on Defendant Schweppe & Sons, Inc.'s ("Schweppe Inc.")'s motion for summary judgment. For the following reasons, Schweppe Inc.'s motion is granted in its entirety.

## BACKGROUND

In assembling the recitation of material facts that follows, we have disregarded any alleged facts or purported denials that are unsupported by the record or do not comply with Local Rule 56.1. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

In 1968, Plaintiff James Jefchak ("Jefchak") began working in the warehouse of Schweppe Inc., a distributor of restaurant products and equipment. In 1974, Jefchak

became a truck driver for Schweppe Inc. and joined the Teamsters Union. In August 2005, Jefchak approached Harold Herron, a salesperson for Schweppe Inc., to inquire about taking over Herron's route when Herron retired the following month. Prior to Herron's 26-year career as a salesperson, he, like Jefchak, had been a truck driver for the company, and Jefchak wanted to follow Herron's career path. In September 2005, Jefchak asked Jeff Schweppe ("Schweppe"), president of the company, if he could take over Herron's route. The parties dispute precisely what was said concerning Jefchak's abilities to handle the route. Jefchak told Schweppe that he would investigate whether or not he could retire, receive his pension from the union, and continue working for Schweppe Inc. as a salesperson.

In his complaint, Jefchak alleged that Schweppe "informed [him] that he would assume full responsibility for Herron's sales route." However, at his deposition, Jefchak admitted that this allegation was untrue, and testified that he was never told he would receive all of Herron's accounts. Further, Schweppe had never given a whole route to any new salesperson; instead, the salesperson began with some existing accounts and was expected to develop new business.

Sometime in September 2005, Schweppe told Jefchak he would be hired as a salesperson. Jefchak voluntarily retired from his position as a truck driver and from the union. He began receiving his pension benefits, which he still receives today.

After retiring, Jefchak learned he was to receive slightly more than half of the accounts on Herron's route - and accordingly, the opportunity to earn half of the salary in commissions that Herron had been receiving. When Herron's accounts were divided, Jefchak received 30 accounts, and the remainder were divided among Schweppe Inc.'s sales staff as follows: Kim Reed received 18 accounts, Mike Singleton received three accounts, and the remaining 16 accounts were transferred to customer service.

During Jefchak's tenure as a salesperson, Schweppe testified that he learned from his account manager, Kim Fedderson, that Jefchak was making more than the usual number of errors in entering customer orders, especially errors in pricing items, and that he was refusing training on the computer in order to reduce these errors. At Schweppe Inc., salespersons, with the exception of Jefchak, used computers to enter customer orders, obtain product and vendor information, view payment histories, and other functions. Schweppe testified that he personally told Jefchak on four occasions that he was required to use the computer and had to obtain training on the system. Further, he told Jefchak that training was available on Fridays in the customer service department. Fedderson testified that she told Schweppe that Jefchak had been committing mistakes regarding customer orders, especially in pricing items over list price or under cost. Notes made by Fedderson indicate that Jefchak was making errors similar to those of other salespeople when they first started working. Fedderson

testified that she set up two appointments for Jefchak to receive training, both of which Jefchak missed. She also testified that she informed Schweppe of feedback from her department as well as her own personal experience with Jefchak's refusal to train. Jefchak's co-workers testified that they offered to help him with the computer and with pricing, but he refused. Schweppe also contends that customers complained about Jefchak, although there is no documentation of these complaints.

Jefchak denies all of Fedderson and Schweppe's assertions. He denies that he was told anything about problems with pricing and ordering, and denies that he received any verbal or written complaints from customers. Further, he claims that no one told him that training was mandatory and that no one ever offered him training. According to Jefchak, when Herron trained him, Herron explained that he had never used the computer; instead, the customer service department entered the orders.

Schweppe Inc. had maintained a four-person sales department for at least two years prior to July 2006. In July 2006, Schweppe testified that he determined that a four-person department was not necessary, and fired Jefchak, explaining that he was reorganizing the sales department. Schweppe did not tell Jefchak that his termination was related to performance issues. At the time Jefchak was fired, he was 53 years old. The majority of his sales accounts were assigned to Reed and Singleton.

Jefchak has identified Reed and Singleton as two employees whom he contends are similarly situated but had more favorable work conditions: Singleton was 45 years old and had been working as a Schweppe Inc. salesperson since 2001, and Reed was 44 and had been working at Schweppe, Inc. as a salesperson since 2004. Jefchak contends that Reed and Singleton received more training, receive a guaranteed salary, and had lower performance expectations.

With respect to training, Singleton, who was new to Schweppe Inc., received six months of training while Jefchak received two weeks of training by his predecessor, Herron. The record does not indicate the type of training Reed received.

With respect to salaries, unlike Jefchak, both Reed and Singleton were provided with a guaranteed salary in addition to commission during their first year, a salary which was based upon their financial need at the time. Jefchak contends Schweppe promised him to pay him a first month's salary, until his pension checks were issued, but then reneged on this promise and transformed the amount into a loan

. Finally, with respect to performance, Jefchak argues that he was performing at least as well as his colleagues. He points to sales goals, which he says the company set, although Schweppe and its salespeople testified that sales goals were set by the employees themselves. Reed and Singleton fell short of their sales goals, although they did increase their sales every year that they worked at Schweppe Inc. Jefchak met his

sales goals in 2005 and had achieved half of the $500,000 sales goal set in 2006 when he was fired that July. Over his last few years at Schweppe Inc., Herron achieved sales between $800,000 and $900,000.[1] Jefchak claims that he increased sales in his accounts and revived two accounts, but Schweppe denies any knowledge of these increases; no documentary evidence has been supplied to cast light on the validity of either the claim or the denial.

After his termination, Jefchak filed a complaint before the Equal Employment Opportunity Commission ("EEOC"). In these proceedings, Schweppe explained that Jefchak was selected for termination because he was the least senior and least experienced member of the department. Further, Schweppe stated that Jefchak's sales activity was "at best not even status quo" and that his administrative errors in orders indicated a need for additional training, which he was reluctant to accept.

After receiving a right-to-sue letter from the EEOC, Jefchak timely filed suit in this court in October 2006, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 *et seq.* In his complaint, Jefchak

---

[1]In its reply in support of its motion for summary judgment, Schweppe Inc. points to evidence that Jefchak was bringing in less in sales from January 2006 to June 2006 than his co-workers. This is not evidence submitted as an issue of material fact and accordingly, we have no basis from which to assess its evidentiary value. Thus, we cannot consider this measure of Jefchak's performance at this time.

alleges that he was treated less favorably than similarly situated, younger employees in salary and training and ultimately fired because of his age. Jefchak also alleges that Schweppe induced him into retiring from the union to become a route salesperson by promising him a sales route that would allow him to earn greater than $50,000. By inducing his voluntary retirement, Schweppe allegedly prevented him from obtaining the pension benefits he would have received had he remained in the union until retirement age, and by extension, saved Schweppe Inc. the expense of contributing to Jefchak's increased pension benefits. At the conclusion of discovery, Schweppe Inc. filed the instant motion for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to

the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). At summary judgment, we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This standard is applied "added rigor" in employment discrimination cases, in which motive and credibility are often key issues. *Roberts v. Separators, Inc.*, 172 F.3d 448, 450 (7th Cir. 1999) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993)).

## DISCUSSION

## I.  ADEA Claim

The ADEA prohibits employers from discriminating on the basis of age against employees in hiring, discharge, compensation, or other privileges and conditions of employment. 29 U.S.C. § 623(a). In order to show that he was terminated in violation of the ADEA, Jefchak must show that age motivated Schweppe Inc.'s decision - that his age "actually played a role" in the decisionmaking process and "had a determinative influence on the outcome." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (internal citations omitted).

Jefchak may prove his case using either the "direct" or the "indirect" method of proof. *Id.* The "direct" method of proof is not limited to direct admissions that the decisionmaker was motivated by the prohibited characteristic; instead, a plaintiff may use circumstantial evidence "which suggests discrimination albeit through a longer chain of inferences." *Id.* Circumstantial evidence is also utilized in the "indirect" method of proof, which employs the burden-shifting formula first set out in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* In this case, in which Jefchak's job duties were absorbed by other employees rather than eliminated entirely, courts will modify the *McDonnell-Douglas* burden shifting formula for a "mini reduction-in-force" situation. *Hemsworth*, 476 F.3d at 492 (*citing Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 693 (7th Cir. 2000)). Accordingly, Jefchak may establish his *prima facie* case by showing that: "(1) he is a member of a protected class; (2) he was performing his job satisfactorily, (3) he suffered a materially adverse employment action; and (4) his job duties were absorbed by employees who were not members of his protected class." *Hemsworth*, 476 F.3d at 492. If Jefchak is able to establish his *prima facie* case, Schweppe Inc. must then produce legitimate, nondiscriminatory reasons for Jefchak's termination - reasons that Jefchak may then attempt to show are pretextual. *Id.*

Although Jefchak argues that he has sufficient evidence to prove his case under the direct method of proof, his proffered circumstantial evidence is exactly the same as that which he offers under the indirect method: his job performance, the treatment of similarly situated employees, and his allegations that the reasons for his termination were pretextual. Accordingly, we will evaluate the sufficiency of his evidence under the indirect *McDonnell-Douglas* formula. There is no dispute that Jefchak is a member of a protected class and that he suffered an adverse employment action when he was terminated, leaving only the questions of whether or not Jefchak was meeting Schweppe Inc.'s legitimate employment expectations and whether or not his job duties were absorbed by those employees outside of the protected class.

A.    *Legitimate Employment Expectations*

Schweppe Inc. maintains that Jefchak was unwilling to learn the procedures and practices of the company. Schweppe bases this assertion on information provided by Fedderson concerning Jefchak's errors in entering his orders, including errors in pricing items, and his refusal to accept the training on the company's computer system that would have reduced those errors. Jefchak denies these assertions, claiming that he was not informed that he was making errors and that he was never told that he needed training. He asserts that the errors were not his fault, because he was not provided the same training as his co-workers. Furthermore, he argues that use of the

computer was not necessary because his predecessor did not use the computer. Accordingly, Jefchak's willingness to train and knowledge of a need to do so are in dispute.

Jefchak also argues that Schweppe Inc.'s expectations were not "legitimate" because Schweppe "set him up to fail" - giving other similarly situated, but younger, coworkers more training and a guaranteed salary. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (plaintiff may establish prima facie case by showing that legitimate employment expectations were applied to similarly situated younger employees in a disparate manner). Even if we assume that Reed and Singleton, both of whom had more seniority and sales experience than Jefchak, were "similarly situated," Jefchak's assertions that they were treated more favorably are not borne out by the evidence.

In terms of training, we note that only Singleton, who was new to Schweppe Inc., received a six-month training period, and that Reed and Jefchak, both of whom had been employed by Schweppe Inc. in other divisions prior to becoming salespersons, did not. In fact, there is no evidence provided with respect to Reed's training. Thus, we do not find that the provision of a six-month training period to Singleton indicates that Schweppe Inc. was treating younger employees more favorably. With respect to salary, Jefchak was the only one of the three salespersons

who did not receive a guaranteed salary during his first year. However, Jefchak admits that Schweppe based the salaries on financial need. Jefchak was the only one of the three salespersons who received a pension and admitted to looking to supplement that income. While Jefchak alleges that Schweppe reneged on a promise to pay him a month's salary before his pension checks were issued, and later required him to take the month's salary as a loan, we do not find that this alleged promise or the loan is inconsistent with Schweppe's "financial need" measure for awarding first-year salaries. Therefore, we do not find the differing first year salaries probative of more favorable treatment for younger employees. Jefchak has failed to show that his younger coworkers were treated more favorably.

Finally, Jefchak points to his achievement of sales goals as evidence that he was meeting the legitimate business expectations of Schweppe Inc. However, in this suit, Schweppe Inc. never raised Jefchak's failure to make sales as a reason for terminating him. Accordingly, Jefchak's sales performance is not dispositive of the issue of whether or not he was meeting Schweppe Inc.'s legitimate employment expectations. To the extent Jefchak raises his sales performance in an effort to question the legitimacy of Schweppe Inc.'s expectations, we consider whether or not the expectations are "phony." *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006). As we discuss in greater detail with respect to pretext, we do not find

the requirement that salespersons be trained on and use the computer in a sales operation to be a "phony" employment expectation.

B.    *Assumption of Duties by Persons Outside the Protected Class*

There is no dispute that the majority of Jefchak's accounts were assumed by Reed and Singleton after he was fired. Schweppe Inc. argues that, because Reed and Singleton were only eight and nine years younger than Jefchak, their assumption of his duties cannot be considered evidence of age discrimination. *See Hemsworth*, 476 F.3d at 492. There is no requirement that an ADEA plaintiff must be discriminated against in favor of someone outside the protected group; instead, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination." *O'Connor v. Consolidated Coin Caterers Corp*., 517 U.S. 308, 313 (1996) (noting that it would be difficult to establish age discrimination when employee is replaced by another worker only a few years younger). The *O'Connor* Court emphasized, however, that the main analysis should remain whether or not the evidence, taken as a whole, is sufficient to raise an inference of age discrimination. *Id.* at 312. In *Hartley v. Wisconsin Bell, Inc.*, the Seventh Circuit defined an age gap of ten years between the plaintiff and similarly situated employees to be "presumptively substantial" under *O'Connor*'s "substantially younger" requirement. 124 F.3d 887, 893 (7th Cir. 1997). However, the Seventh Circuit later noted that this standard is not a

"bright line" and a plaintiff may still make a case of age discrimination if the evidence otherwise reveals that the employer was motivated by age. *EEOC v. Bd. of Regents of Univ. of Wis. Sys.*, 288 F.3d 296, 302 (7th Cir. 2002).

In this case, the age difference between Jefchak and his co-workers is eight and nine years - an age gap that does not give rise to a legal presumption of age discrimination. Further, Jefchak has not produced any evidence to show that age was otherwise a factor in his termination. He has shown only that he disputes his employer's account of his performance. We find nothing in Schweppe Inc.'s treatment of Reed and Smith to indicate that it favored younger workers. Finally, as will be discussed in detail in connection with his ERISA claim, we find that there is no evidence that Jefchak's retirement status played any role in his termination.

Given Jefchak's failure to raise an inference of age discrimination because he cannot show that his duties were assumed by substantially younger persons, we find that he cannot establish a prima facie case of age discrimination under either the "direct" or "indirect" method of proof.

C.    *Pretext*

Even if we assume that Jefchak has established a *prima facie* case, he cannot show that Schweppe Inc.'s reasons for terminating him - his lack of seniority and his failure to learn the procedures of the company - were pretextual. Courts do not concern

themselves with the wisdom or correctness of an employer's decision; instead they examine the honesty with which the belief is held. *E.g., Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006). A conclusion that a belief is honestly held also necessarily requires a conclusion that the belief is a reasonable one. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001). To show that an employer's reasons are pretextual, a plaintiff must show that they were, in essence, deliberate falsehoods. *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416, 419 (7th Cir. 2006). An employee's disagreement with his employer's assessment of his job performance does not mean that the employer's belief was insincere. *Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1056 (7th Cir. 2006). Instead, the employee must put forth specific evidence demonstrating that the employer's stated reason for termination was a lie. *Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 754-55 (7th Cir. 2006).

As an initial matter, the validity of Schweppe Inc.'s first reason for terminating Jefchak - his lack of seniority - is not contested. While Jefchak had worked for the company for many years, it is undisputed that he was the newest member of the sales force, that the sales force position was not a union position, and that by voluntarily retiring, Jefchak forfeited his union seniority rights. Although Jefchak may have hoped that Schweppe Inc. would take his years of service into account, the company was not obligated to consider this factor and its failure to do so does not undermine the validity

of its reason for terminating him. As the Seventh Circuit has noted, "the ADEA was not intended to legislate seniority rights where none exist in the contract of employment." *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1217 (7th Cir. 1985).

Jefchak does argue that Schweppe Inc.'s second reason for terminating him - his failure to learn the procedures of the company - is pretextual. Jefchak asserts that Schweppe Inc.'s reason is unworthy of belief because Jefchak was never informed of any performance deficiencies and was meeting his sales goals. As further evidence of pretext, Jefchak points the absence of documentary evidence and what he contends are Schweppe Inc.'s shifting explanations for his termination and Schweppe's lies to this Court. We do not find that Jefchak has met his burden of producing specific evidence calling into question the honesty of Schweppe's belief. *Burks*, 464 F.3d at 754-55.

First, we note that Jefchak's alleged sales performance is beside the point; it is not unreasonable for Schweppe to require that his employees use the computer to enter sales orders and find an employee's unwillingness to do so reason enough to fire that person, regardless of his or her sales performance. Jefchak has provided no evidence to raise an inference that other employees, not using the computer, were retained while Jefchak was fired.

Second, the undisputed evidence indicates that Schweppe was aware, having been informed by Fedderson, that Jefchak was committing errors in customer orders,

especially errors in pricing items above list price or below cost, and that he was refusing computer training. Fedderson confirmed that she told Schweppe of problems she had encountered with Jefchak, including his pricing errors and his refusal to attend training. Testimony of Jefchak's co-workers, Reed and Singleton, is also consistent with Fedderson's testimony as to Jefchak's refusal to accept offers of help in learning the computer. Jefchak does not contend that the errors did not occur, nor does he contend that he attempted to obtain training but was prevented from doing so. Jefchak does not proffer any evidence contradicting Schweppe, Fedderson, Reed, or Singleton's accounts; instead, he flatly denies them and implies that all four are lying. Jefchak's only means of casting doubt on the honesty of Schweppe's belief is his own claim that he, Jefchak, was performing well and that he was never informed of deficiencies in performance or the need for training. These self-serving assertions are not enough to contradict Schweppe Inc.'s stated reason for termination.

Jefchak also points to the fact that no documentary evidence exists supporting Schweppe Inc.'s reason for terminating him as evidence of pretext. This argument is unavailing; as the Seventh Circuit has explained, "in arguing that a lack of documentation supports a finding of pretext, the plaintiffs confuse [the employer's] burden with their own burden. An employer's burden is a burden of production (not the burden of proof)." *Hague*, 436 F.3d. at 826-27. Once the employer produces a

nondiscriminatory reason, the plaintiff is obligated to present proof that would give the trier of fact a reason to doubt the honesty of the employer's explanation. Schweppe's failure to inform Jefchak of performance deficiences, standing alone, is not evidence of pretext. *Hague*, 436 F.3d at 827. Especially in the absence of evidence that Schweppe Inc. employed a "warning" or review procedure by which Jefchak would normally have been informed of performance deficiencies, and that such a procedure was not followed, the fact that documentation does not exist is not a reason to disbelieve Schweppe Inc.'s stated reason for termination.

Next, Jefchak argues that Schweppe Inc. has proffered changing reasons for his termination and that such a shifting explanation permits an inference that Schweppe Inc.'s stated reason is pretextual. As the Seventh Circuit has explained, "shifting and inconsistent explanations can provide a basis for a finding of pretext...but the explanations must actually be shifting and inconsistent to permit an inference of mendacity." *Schuster v. Lucent Technologies, Inc,*. 327 F.3d 569, 577 (7th Cir. 2003). First, Jefchak points to Schweppe's failure to tell him, upon his firing, why he was being fired. The fact that an employer does not specifically explain to an employee why he or she is being fired is not probative of pretext. *Hague*, 436 F.3d at 827-28 (no suspicion of pretext raised by failure to explain to employee why he didn't "fit" with company). Second, he notes that Schweppe Inc. only raised the issue of customer

complaints concerning Jefchak's performance when the lawsuit was filed. Although Schweppe Inc. did not raise the issue of customer complaints concerning Jefchak at the EEOC proceeding, such information, if not inconsistent with prior claims, is considered an additional explanation, rather than a "shifting or inconsistent" explanation, when offered at the time of the lawsuit. *Schuster,* 327 F.3d at 579. At the EEOC, as in this court, Schweppe Inc. has maintained that Jefchak was unwilling to learn the procedures of the company and that attitude, as well as his lack of seniority, were the reasons he was terminated. Schweppe Inc. has never disavowed or changed its reasons for terminating Jefchak. While it may have added to those reasons, we see no reason to view Schweppe's expanded explanation as inconsistent with its prior explanations.

Finally, Jefchak asserts that Schweppe is a liar, and more specifically, is lying about his reasons for firing him. Jefchak points to several pieces of the record that he claims indicate Schweppe's mendacious nature. First, Jefchak points to the fact that Schweppe did not raise the issue of customer complaints until his suit was filed, a fact which we have already determined is not dishonest. Second, he points to Schweppe's contention that Fedderson told him that Jefchak was making more errors than others, when she testified only that Jefchak was making the same amount of errors as other salespeople when they started. Such an interpretation of Schweppe's testimony as dishonest is unwarranted, especially considering Fedderson also told Schweppe that

unlike the others, Jefchak had been refusing training. Third, Jefchak contends that Schweppe lied when he said that Herron had input on the division of Herron's accounts, when Herron said that he was not involved. It is true that this testimony is in conflict; whether or not it is probative of Schweppe lying requires a greater leap than the record suggests. Even assuming Herron's version is correct, we do not find this single inconsistency in testimony as evidence that Schweppe is generally unworthy of belief.

As we find there is no evidence from which a reasonable jury could conclude that Schweppe Inc.'s explanation for Jefchak's termination was pretextual, summary judgment is appropriate in favor of Schweppe Inc. on Jefchak's ADEA claims.

## II.    ERISA Claims

Jefchak argues that Schweppe Inc. violated § 510 of ERISA when Schweppe induced him to voluntarily retire from the union and later terminated him. According to Jefchak, Schweppe took these actions in order to avoid continued contributions to Jefchak's Teamsters Union pension fund. To prove a violation of § 510, Jefchak must show that Schweppe Inc. acted with the specific intent to prevent him from obtaining benefits, *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998), or to avoid paying the benefits to which he would have been entitled. *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998). The loss of benefits need not have

been the "but-for" cause of the adverse action, but it does need to be a motivating factor rather than a consequence of the adverse action. *Lindemann*, 141 F.3d at 295; *Salus v. GTE Directories Service Corp.*, 104 F.3d 131, 138 (7th Cir. 1997) (plaintiff required to prove only that employer's desire to interfere with disability benefits *contributed to* its decision to terminate plaintiff) (emphasis in original).

As an initial matter, any argument that Schweppe Inc. terminated Jefchak from his sales position in order to avoid continued contributions to the Teamsters Union pension fund is without support in the record. According to the affidavit of Jose Colin, Fund Manager of the pension fund, Jefchak last worked in "covered employment" in September 2005. Employers are required to contribute only for employees working in covered employment. Once Jefchak retired from the Teamsters Union, Schweppe Inc. no longer needed to make weekly pension contributions for him. Thus, Schweppe gained nothing by firing Jefchak in July 2006 that it had not already gained in September 2005.

We turn now to Jefchak's remaining argument: that Schweppe induced him to retire early from the Teamsters Union in order to avoid contributing to the fund until Jefchak reached retirement age. In his complaint, Jefchak alleged that Schweppe induced him to retire when he promised him that he would take on Herron's entire sales route, which would have resulted in Jefchak earning about $50,000 a year in

commissions. Jefchak admitted in his deposition that this assertion was untrue and that he was never promised Herron's entire route. Now Jefchak claims that Schweppe induced him to retire when, despite being aware that Jefchak was applying for Herron's entire sales route, and expressing his belief that Jefchak could handle that route, Schweppe waited until after Jefchak had submitted his retirement to announce that Jefchak would only assume half of Herron's accounts.

No reasonable jury could find that Schweppe induced Jefchak's retirement. Instead, the evidence shows that it was Jefchak who initiated the actions leading to his retirement: Jefchak approached Herron, and then repeatedly approached Schweppe, with the request that he be employed as a salesman once Herron retired. Further, Jefchak has contradicted his own allegation that Schweppe assured him that he would get Herron's entire route. Schweppe never promised Jefchak that he would get Herron's entire route, nor did Schweppe ever promise or lead Jefchak to believe that he would earn the same amount of money Herron earned. Even drawing all inferences in Jefchak's favor, Schweppe's actions are insufficient to allow a reasonable juror to conclude that Jefchak, despite having originated the idea himself, had been somehow "induced" into retiring from the union. Thus, there is no evidence that Schweppe intended to interfere with Jefchak's benefits, and summary judgment is granted to Schweppe Inc. on Jefchak's ERISA claim.

**CONCLUSION**

For the foregoing reasons, summary judgment is granted in favor of Schweppe Inc. on all claims.

_Charles P. Kocoras_
Charles P. Kocoras
United States District Judge

Dated:  September 27, 2007